**SO ORDERED.**

**SIGNED this 21 day of December, 2010.**



*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

ASHRAF F. HASSAN,  CASE NO. 04-20332-7
IRINA HASSAN,  CHAPTER 7

DEBTORS.

# OPINION RESOLVING VARIOUS ISSUES RAISED ABOUT THE TRUSTEE'S MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY, AND DECLARING THE MOTION WILL BE JOINED WITH ADVERSARY NO. 05-6215 FOR RESOLUTION

This matter is before the Court on the "Trustee's Motion for Order Finding Violation of the Automatic Stay under 11 U.S.C. § 362(k) or, in the Alterative, Motion for Order of Contempt under 11 U.S.C. § 105(a)," and the objection and response filed by Mark Murphy and the Murphy Law Firm, P.A. Chapter 7 Trustee Christopher J.

Redmond appears on his own behalf and with co-counsel P. Glen Smith, and Gabrielle A.J. Beam of Husch Blackwell Sanders LLP. Mark Murphy and the Murphy Law Firm, P.A., appear by counsel George D. Halper and Daniel F. Church of McAnany, Van Cleave & Phillips, P.A. The Court has reviewed the relevant materials and is now ready to rule on some of the issues raised by the Trustee's motion and the objection.

**Facts**

For purposes of this opinion, only the following facts and allegations are relevant.

On February 3, 2004, Debtor Ashraf Hassan and his wife filed a voluntary petition for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Code. Before filing, the Debtor had operated a limousine and taxi service using various names, including those of some corporations he had formed, although he observed no corporate formalities in conducting the business. At least some aspects of the business were disclosed on the couples' bankruptcy schedules.

About seven weeks after filing for bankruptcy, the Debtor began making arrangements to sell his limousine and taxi service to Al Moser. In mid-May, the men met with Mark Murphy of the Murphy Law Firm ("the Murphy Defendants"). Murphy drafted a "Stock Purchase Agreement" and a "Pledge Agreement" documenting the Debtor's sale of his business to Moser, although whether Murphy simply wrote down what the men told him they were agreeing to or incorporated legal advice he gave them about the transaction is disputed. The agreements showed the Debtor was selling the stock of a corporation he owned to Moser. The Debtor and Moser signed the documents

on May 28, 2004. Moser had begun making payments to the Debtor a couple of days earlier, and had paid a total of $105,000 by the day they signed the documents. Moser paid the Debtor another $24,420 during June 2004. The Debtor did not disclose his pending bankruptcy case to Moser or the Murphy Defendants. Moser later formed a corporation to operate the business he was buying from the Debtor.

On June 29, 2004, Moser learned of the Debtor's bankruptcy filing, and told Murphy about it on July 2. Murphy accessed this Court's electronic filing system and obtained information about the Debtor's case. The Debtor and Moser met with Murphy to talk about the situation. Again, the exact nature of Murphy's involvement in the discussion is disputed, but the parties admit Murphy produced a new fourteen-page document labeled "Agreement," which the Debtor and Moser (as president of his corporation) signed on July 6, 2004, although the document ("the Second Agreement") said they had signed it May 28. The Debtor was paid another $171,000 at that time. A short time later, although the Debtor had never given his bankruptcy attorney a copy of the Stock Purchase Agreement or the Pledge Agreement, he sent a copy of the Second Agreement to the attorney. The Trustee claims the attorney forwarded a copy of the Second Agreement to him, and the Trustee relied on it to conclude no property of the estate had been involved in the transaction between the Debtor and Moser. Within a few weeks of the transaction, Moser rescinded the contract with the Debtor and demanded his money back, but the Debtor refused to repay him.

In February 2005, the Debtor allegedly received more money from a second buyer

3

of his business. The Trustee alleges the Murphy Defendants participated in or facilitated this second sale.

On December 7, 2005, the Trustee filed a complaint, assigned Adversary No. 05-6215, against a number of parties, including the Murphy Defendants, who were allegedly involved in the Debtor's transaction with Moser and the Debtor's use of the money he received. Count XIX made a claim for an award of attorney fees and expenses incurred in prosecuting the complaint. In June 2006, the Murphy Defendants filed a motion for joinder. The Court granted the motion, and required the Trustee to amend his complaint to bring in additional parties. The Trustee filed his amended complaint in October 2006. The parties added by the amended complaint filed an answer, and also asserted counterclaims, cross claims, and third party claims, which required time for another round of responsive pleadings by the other parties.

In his amended complaint, the Trustee seeks relief against the Murphy Defendants in four counts. In the first ("Count V" in the complaint), the Trustee alleges the Murphy Defendants, the Debtor, and another party engaged in a civil conspiracy to defraud the Debtor's bankruptcy estate by disguising the true nature of the transaction with Moser, and seeks to recover from all of them damages caused by the alleged fraud. In the second ("Count VI"), the Trustee alleges the Murphy Defendants, the Debtor, and another party engaged in a civil conspiracy to convert property of the bankruptcy estate, and seeks from all of them damages cause by the alleged conversion. In the third ("Count VIII"), the Trustee alleges all the defendants converted property of the bankruptcy estate by

4

exercising dominion and control over the Debtor's business, and seeks to recover damages proximately caused by that conversion. In the fourth, ("Count XI"), the Trustee asks "[a]s set forth in Rule 7008(b) of the Rules of Bankruptcy Procedure" for an award of the attorney fees and expenses he has incurred in prosecuting the adversary proceeding.

In addition to the motion for joinder, a number of procedural matters have delayed resolution of Adversary No. 05-6215. The Murphy Defendants sought a jury trial before the District Court on the Trustee's claims against them, the Trustee opposed that effort, and in December 2006, the Court issued a recommendation to the District Court on the matter. In March 2008, the District Court determined that the Murphy Defendants were entitled to a jury trial on the claims against them and that the jury trial would be held before the District Court, but that the case should proceed before this Court until it was ready for trial. The parties added by the amended complaint also sought a jury trial on the Trustee's claims against them, and in January 2007, the Court issued a recommendation to the District Court on that matter, but the Trustee reached a settlement with the added parties that was approved by the Court a few months later. The Trustee moved for partial summary judgment, and in December 2007, the Court issued an opinion granting part of the motion. The Murphy Defendants appealed, but in February 2008, the District Court dismissed the appeal as interlocutory. At least as early as a status conference held in July 2008, the parties indicated that they were interested in taking their remaining disputes to mediation.

In June 2009, the Murphy Defendants filed a motion for summary judgment, and

5

the Trustee's response time was extended while the parties tried to resolve their dispute through mediation. Mediation was not successful. In September 2009, the Trustee filed a cross-motion for summary judgment, and a combined memorandum responding to the Murphy Defendants' motion and supporting his cross-motion. In that memorandum, the Trustee argued he was entitled to recover attorney fees and other sanctions for the Murphy Defendants' alleged violations of the automatic stay. The final pleading related to the summary judgment motions was filed on December 15, 2009.

On December 21, 2009, in the Debtors' main bankruptcy case, the Trustee filed the motion for sanctions for violation of the automatic stay ("the Contempt Motion") that is the subject of this opinion. The Contempt Motion is based on the same facts alleged in the amended complaint in Adversary No. 05-6215. The Murphy Defendants filed their objection and response on January 13, 2010. No further pleadings about this matter have been filed.

**Discussion**

The Murphy Defendants contend the Trustee's effort to recover sanctions for violations of the automatic stay is procedurally improper for several reasons. First, they point out a scheduling order entered in Adversary No. 05-6215 set May 31, 2006, as the deadline for the Trustee to amend his pleadings. Second, they contend laches should bar the Contempt Motion. Third, they contend the Trustee's new effort apparently resulted from his recognition that they correctly pointed out in their motion for summary judgment in the adversary proceeding that he had not asserted a valid claim for attorney fees. They

6

argue they would be prejudiced if he were allowed now to assert a potentially valid claim for fees, because their defense in the adversary proceeding would have been altered if he had claimed a stay violation from the beginning of that proceeding.

Moving to the substance of the Contempt Motion, the Murphy Defendants argue the Trustee cannot recover sanctions under § 362(k)(1)[1] because he does not qualify as an "individual" under that provision. Otherwise, they say their substantive defense to the Contempt Motion is the same as the defense they asserted in their summary judgment motion in Adversary No. 05-6215.

**1.  Under the Federal Rules of Bankruptcy Procedure, the scheduling order in Adversary No. 05-6215 did not preclude the Trustee from filing the Contempt Motion in the Debtors' main bankruptcy case.**

Violations of the automatic stay are punishable as contempt of court,[2] whether sanctions are available under § 362(k)(1) or only under § 105(a). The Murphy Defendants argue the Trustee needed to seek leave to amend his adversary complaint to pursue stay violation sanctions, rather than filing the Contempt Motion in the Debtors'

---

[1] When the Debtors commenced this case, the provision the Trustee is relying on was codified as § 362(h). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23, amended § 362(h), adding an exception to it and recodifying it as § 362(k)(1). The new exception does not apply to this case, and the language that does apply was not modified. In this opinion, the Court will refer to the provision by its new designation but, obviously, cases that are cited that were decided before 2005 refer to it as § 362(h).

[2] 3 *Collier on Bankruptcy*, ¶ 362.11[2] (Resnick & Sommer, eds.-in-chief, 15th ed. rev. 2009); *see also Mountain American Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 446-50 (10th Cir. 1990) (bankruptcy court had power to and properly imposed contempt sanctions under § 105(a) for violation of automatic stay).

7

main bankruptcy case. Those matters that are adversary proceedings are specified in Federal Rule of Bankruptcy Procedure 7001, and the procedures governing adversary proceedings are set out in the 7000 series of the Bankruptcy Rules. Rule 7001(1) provides that "a proceeding to recover money or property" is an adversary proceeding, which might include the Contempt Motion. Rule 9020, though, provides that Rule 9014 governs a motion for an order of contempt. Rule 9014 governs contested matters, and subsection (a) of the rule provides that in a contested matter, "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Even though, as the Murphy Defendants point out, the Contempt Motion is based on the same facts the Trustee alleged in his adversary complaint, Rule 9020 and Rule 9014 allowed him to seek contempt sanctions by filing a motion in the main case. Rule 7001(1) and Rule 7018, incorporating Civil Rule 18, might well have authorized the Trustee to join the contempt claim with the claims he had already asserted in Adversary No. 05-6215, but the claim cannot be barred because he instead followed another permissible procedure for asserting it.

**2. Despite the Trustee's delay in asserting the Contempt Motion, laches does not bar it because, if Civil Rule 15 (made applicable to adversary proceedings by Bankruptcy Rule 7015) governed it, the Court would allow the adversary complaint to be amended to seek sanctions for alleged stay violations, and that rule provides protection against improper delay, just as laches does.**

The Murphy Defendants argue (1) the Trustee knew all the alleged facts

supporting the Contempt Motion four years ago when he filed the complaint that commenced Adversary No. 05-6215, (2) he should have asserted the stay violation claim in that proceeding, and (3) they would be prejudiced if he is allowed to assert the claim now. Although the Trustee made a claim for attorney fees in the adversary complaint, the Murphy Defendants seem to be arguing that claim had no effect on their defense strategy. They say it would be unfair to allow the Trustee to add this claim now, after he "has accumulated hundreds of thousands of dollars in attorney fees,"[3] because their strategy would have been greatly altered if he had asserted the stay violation earlier.

A claim can be barred by laches when the party making the claim has not been diligent and the party against whom the claim is made has been prejudiced by the delay.[4] Under Civil Rule 15, made applicable to adversary proceedings by Bankruptcy Rule 7015, such concerns can similarly bar an amendment to a complaint, and the case law under Rule 15 is much more developed than laches case law. Consequently, the Court will analyze under Rule 15 the Trustee's delay in alleging the Murphy Defendants violated the automatic stay.

At this point in the adversary proceeding, Civil Rule 15(a)(2)[5] would require the

---

[3] Docket #165 at 14.

[4] *See Costello v. United States*, 365 U.S. 265, 282 (1961); *Schmidt v. Farm Credit Servs.*, 977 F.2d 511, 516 (10th Cir. 1992).

[5] Civil Rule 15 was amended effective December 1, 2007, after the Trustee commenced Adv. No. 05-6215, but before he filed his motion for stay violation sanctions. The rulemakers explained the Rule 15 changes were part of a general restyling of the Civil Rules to make them more easily understood and consistent in style and terminology. The changes in the portions quoted or otherwise relied on in this opinion were "intended to be stylistic only," so the Court will not consider whether the prior version of

9

Trustee to obtain the Court's leave to amend his complaint to assert the stay violation claim, but provides: "The court should freely give leave when justice so requires." Rule 15(b)(1) provides that even at trial, if a party objects that evidence is not within the issues raised in the pleadings, the court may allow an amendment, and "should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Since the Trustee filed the Contempt Motion before Adversary No. 05-6215 has gone to trial, this part of the rule makes clear the motion might not have been filed too late.

Some years ago, the Supreme Court explained that the idea behind Rule 15 was to decide cases on the merits as much as possible, rather than on parties' pleading abilities:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."[6]

Prejudice to the opposing party is the most common reason for denying leave to amend under Rule 15,[7] and that is the reason the Murphy Defendants rely on.

---

Rule 15 would be applicable here or would lead to a different result. The rule was amended again in 2009, but the changes did not affect the portions relevant to this opinion.

[6] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[7] 6 Wright, Miller, & Kane, *Fed. Practice & Procedure: Civil 2d*, § 1487 at 613 (1990).

10

The Murphy Defendants do not suggest the Contempt Motion will require them to engage in additional discovery, or will otherwise delay getting the adversary complaint to trial. Instead, they say the factual allegations in the motion are essentially the same as those in the Trustee's adversary complaint. Therefore, it follows that the motion should not make any further discovery necessary. In addition, because all the Trustee's claims rely on the same alleged facts, any evidentiary hearing required to resolve the motion can easily be combined with trial on the complaint, so the motion should not cause any further delay.

Although the Trustee made a claim for attorney fees in both his original and his amended adversary complaints, the Murphy Defendants argue their June 2009 summary judgment motion has pointed out the Trustee stated no valid basis for a recovery of attorney fees, and they will be prejudiced if the Trustee is allowed now to assert a possibly valid basis for that claim. But a change in the theory of recovery is not enough to justify denying an amendment under Rule 15,[8] nor is the fact the amendment would increase the defendant's potential liability.[9] The Trustee is seeking in Adversary No. 05-6215 to recover about $300,000 the Debtor allegedly received in the sale to Moser and $86,000 he allegedly received in a later sale. The amount of attorney fees the Trustee has incurred is a matter of speculation at this point, and in any event, is subject to review by

---

[8]*Ward Electronic Serv., Inc., v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987).

[9]*See, e.g., Adair v. Hunt Int'l Resources Corp.*, 526 F.Supp. 736 (D. Ill. 1981) (leave to add similar claims of 675 new plaintiffs allowed).

11

the Court to determine both the reasonableness of the fees and the extent to which they may be recovered from the Murphy Defendants. The Murphy Defendants have known from the outset that the Trustee claimed to be entitled to recover attorney fees. Their defense strategy perhaps should not depend on whether they may have to pay the Trustee's attorney fees, but rather on the merits of the case.

On the other hand, until the Trustee filed his response to the summary judgment motion three and three-quarters years after commencing Adversary No. 05-6215, he had not explained that his claim for attorney fees was based on alleged stay violations. In *Minter v. Prime Equipment Company*,[10] the Tenth Circuit said delay alone is enough under Rule 15 to deny an amendment, even when the opposing party fails to establish prejudice. Three and three-quarters years could easily be long enough to amount to undue delay. The Tenth Circuit looked to the reasons for the party's delay to decide whether the delay was "undue." A review of the circumstances of that case points to the proper resolution of this one.

In *Minter*, the plaintiff had been seriously injured when he fell off an industrial lift.[11] Five years of litigation ensued during which the plaintiff thought the lift had been manufactured with the allegedly defective feature he claimed had allowed him to fall.[12] Then, shortly before a scheduled trial, the manufacturer and a defendant that had owned

---

[10] 451 F.3d 1196, 1205-06 (10th Cir. 2006).

[11] *Id.* at 1197.

[12] *Id.* at 1197-98.

the lift for a time stipulated the feature had been added to the lift while it belonged to that defendant.[13] After that, the plaintiff waited for six months before he asserted a product liability claim against the defendant-prior-owner for altering the product before selling it to the company that leased it to the plaintiff's employer.[14] Reversing the lower court's refusal to allow the plaintiff to amend his pleadings to assert that new claim, the Circuit concluded the plaintiff's assumption that his original pleading had encompassed a product liability claim against the defendant based on the lift's alteration was an excusable cause for his delay.[15]

In this case, there can be no doubt that the Trustee's complaint and amended complaint informed the Murphy Defendants that the Trustee sought to recover attorney fees from them. Although the Murphy Defendants pursued a number of pretrial motions, they did not contest the validity of the attorney fees claim until they filed their motion for summary judgment in June 2009. In his timely response to that motion, the Trustee for the first time explained he was basing that claim on alleged violations of the automatic stay and seeking fees and other damages under § 362(k)(1). In his reply to the response to his own summary judgment motion, the Trustee added an alternative request for contempt sanctions under § 105(a). Like the Circuit in *Minter*, the Court concludes the Trustee's assumption he had stated a claim for attorney fees in his original and amended

---

[13]*Id*. at 1200-01.

[14]*Id*. at 1201-03.

[15]*Id*. at 1206-07.

13

Case 04-20332    Doc# 186    Filed 12/21/10    Page 13 of 18

complaints was an excusable cause for his delay in explaining the legal basis for the claim. So even if the Contempt Motion had to meet the Rule 15 standard for allowing an amended pleading, the Court would conclude justice required granting the Trustee leave to file it. As a result, the Court concludes laches should not be applied to bar the Trustee's assertion of the claim for sanctions for stay violations.

3. **In pursuing the Contempt Motion, the Trustee is acting on behalf of the bankruptcy estate, which is not an "individual" entitled to seek sanctions under § 362(k)(1) for stay violations, but he can seek such sanctions for the estate under § 105(a).**

As one ground of his claim for attorney fees, the Trustee argues he can recover them under § 362(k)(1), but the Murphy Defendants say he cannot. With an exception not involved here, that provision reads: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." In *In re Rafter Seven Ranches L.P.*, the Tenth Circuit BAP, agreeing with five circuit courts and disagreeing with two, ruled a limited partnership could not recover under § 362(k)(1) because the Bankruptcy Code consistently uses "individual" to refer to a natural person and not to a partnership or corporation.[16] Courts have also not agreed whether a

---

[16] 414 B.R. 722, 732-33 (10th Cir. BAP 2009).

14

bankruptcy trustee qualifies as an "individual" who can recover under this statute.[17]

The relevant portion of § 362(k)(1) was added to the Bankruptcy Code in 1984, and was part of a group of provisions labeled "Consumer Credit Amendments."[18] The first two circuit courts that considered the scope of the provision ruled it provided a remedy to corporate debtors, as well as to natural persons. The Fourth Circuit implicitly assumed no damage remedy would be available to non-individual debtors for automatic stay violations if § 362(k)(1) did not apply to them,[19] and the Third Circuit simply adopted the Fourth Circuit's view.[20]

The Second Circuit was the next to consider the question, and it disagreed with the earlier circuit opinions. The Second Circuit gave several reasons for limiting the § 362(k)(1) remedy to natural persons: (1) the Bankruptcy Code does not define

---

[17]*Compare Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192-93 (9th Cir. 1995) (Chapter 7 trustee is not "individual" who can recover under § 362(k)), *with Martino v. First National Bank (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 437-39 (N.D. Ill. 1995) (Chapter 7 trustee is "individual" under § 362(k)); *Morris v. St. Joseph Medical Center, Inc. (In re Fisher)*, 194 B.R. 525, 533 (Bankr. D. Kan. 1996) (same).

[18]Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98-353, § 304 (part of Title III — Amendments to Title 11 of the United States Code, Subtitle A — Consumer Credit Amendments), 98 Stat. 333, 352 (1984), *reprinted in* E-1 *Collier on Bankruptcy*, App. Pt. 6(a), at p. App. Pt. 6-29 (Resnick & Sommer, eds.-in-chief, 15th ed. revised 2009).

[19]*Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir. 1986) ("We agree that it seems unlikely that Congress meant to give a remedy only to individual debtors against those who willfully violate the automatic stay provisions of the Code as opposed to debtors which are corporations or other like entities. Such a narrow construction of the term would defeat much of the purpose of the section, and we construe the word "individual" to include a corporate debtor.").

[20]*In re Atlantic Business & Community Corp.*, 901 F.2d 325, 329 (3d Cir. 1988) ("Although Section 362(h) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor." [Citing *Budget Service v. Better Homes*.])

15

"individual" but consistently uses it to refer to human beings, and "person" is defined to include partnerships and corporations, as well as individuals; (2) the earlier circuit courts mistakenly relied on the breadth of the stay imposed by § 362(a) to conclude § 362(k)(1) must be equally broad, and overlooked the fact the sanction provision had been added six years after § 362(a) was first adopted; (3) before § 362(k)(1) was added, civil contempt sanctions for stay violations had been available under the general § 105(a) power to issue necessary or appropriate orders, and Congress might have felt only individuals needed the additional protection included in the new provision; and (4) even though the Bankruptcy Code might function better if § 362(k)(1) were available to all debtors, its plain language required the court to limit it to natural persons.[21] The First,[22] Eighth,[23] and Ninth Circuits[24] later noted the circuit split and agreed with the Second Circuit's view without adding to its reasons. The Eleventh Circuit similarly noted the split among the circuits and adopted the Second Circuit's reasoning, but also gave an expanded explanation why the plain meaning of § 362(k)(1) limited "individual" to natural persons, and said it was "reasonable to infer that Congress enacted [the provision] to provide mandatory compensatory and discretionary punitive damages for individual debtors only," in

---

[21]*In re Chateaugay Corp.*, 920 F.2d 183, 184-87 (2d Cir. 1990).

[22]*In re Spookyworld, Inc.*, 346 F.3d 1, 7-8 (1st Cir. 2003).

[23]*Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Systems, Inc.)*, 108 F.3d 881, 884-85 (8th Cir. 1997).

[24]*In re Goodman*, 991 F.2d 613, 619-20 (9th Cir. 1993) (corporate lessee that subleased property to debtor could not recover under § 362(k)(1) for landlord's stay violation because not an "individual").

addition to the discretionary remedies already available under § 105.[25]

The Court agrees with the First, Second, Eighth, Ninth, and Eleventh Circuits and the Tenth Circuit BAP that "individual" in § 362(k)(1) refers only to natural persons, and not to corporations, partnerships, or other artificial entities. This will almost always preclude Chapter 7 trustees from seeking damages under that provision because recovery will typically be sought on behalf of the bankruptcy estate, an entity that is not a natural person.[26] It is conceivable a Chapter 7 trustee might believe actions taken in violation of the automatic stay have somehow injured him or her personally, and claim compensation under § 362(k)(1), but the Trustee in this case has made no such claim. Instead, he claims attorney fees only on behalf of the Debtors' bankruptcy estate, which is not a natural person. He cannot recover for the estate under § 362(k)(1).

Instead, as recognized by the five circuit court opinions limiting § 362(k)(1) to natural persons and the Tenth Circuit BAP in *Rafter Seven Ranches*, the Trustee may pursue his stay violation claim under § 105(a). That provision authorizes the Court to award damages for automatic stay violations to the extent an award is "necessary or appropriate" to carry out the provisions of the Bankruptcy Code.

**Conclusion**

For these reasons, the Court concludes the Trustee permissibly asserted his stay violation claim by filing the Contempt Motion in the Debtors' main bankruptcy case, and

---

[25]*In re Jove Engineering, Inc.*, 92 F.3d 1539, 1549-53 (11th Cir. 1996).

[26]*See Pace*, 67 F.3d at 192-93 (9th Cir. opinion).

17

Case 04-20332   Doc# 186   Filed 12/21/10   Page 17 of 18

laches does not bar the Contempt Motion. However, the Court concludes the bankruptcy estate is not an "individual" under § 362(k)(1), so the Trustee cannot rely on that provision to try to recover attorney fees for the estate. He can only try to recover attorney fees as a civil contempt sanction under § 105(a). Because the claims the Trustee has asserted in Adversary No. 05-6215 are based on the same alleged facts as the Contempt Motion, the Court will join that motion with the amended complaint in the adversary proceeding, and decide all the Trustee's claims together. In this opinion, the Court has rejected the Murphy Defendants' procedural defenses to the Trustee's Contempt Motion, but will address their remaining substantive defenses to the Contempt Motion in a separate opinion resolving the opposing summary judgment motions filed in Adversary No. 05-6215.

# # #